IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

LUIS VEGA,

        Plaintiff,                    No. CIV S-03-2433 MCE KJM P

    vs.

E. ALAMEIDA, et al.,

        Defendants.            <u>FINDINGS & RECOMMENDATIONS</u>

_____/

        Plaintiff is a state prison inmate proceeding pro se with a civil rights action under 42 U.S.C. § 1983, alleging that defendant Higgins used excessive force against him on September 3, 2002.  Defendant Higgins has filed a motion for summary judgment.

I. <u>Standards For A Summary Judgment Motion</u>

        Summary judgment is appropriate when it is demonstrated that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).

/////

/////

/////

/////

1

>Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Id. Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. See id. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could

return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed. See Anderson, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

On May 25, 2004, the court advised plaintiff of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure. See Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc), cert. denied, 527 U.S. 1035 (1999): Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).

/////

II. <u>Preliminary Evidentiary Matters</u>

In support of his motion for summary judgment, defendant Higgins has filed two declarations, some records from plaintiff's central file, and a videotape of an interview with plaintiff about his claim that defendant Higgins used force on him. In his motion for permission to file the video recording in support of motion for summary judgment, defendant describes the recording as "an undisputable record of Plaintiff's initial description of the incident . . ."

Plaintiff's "motion of opposition" to the summary judgment motion takes issue with prison officials' failure to follow certain procedures that would have better documented his injuries, but does not proffer any affidavits or other evidence. He asks the court to "let plaintiff know what plaintiff must do to . . . oppose in the correct way. . . ." As noted, the requested instructions were given to plaintiff in this court's order of May 25, 2004; defendant also provided instructions in his motion for summary judgment.

Plaintiff does note that his version of the events is "fully covered" in his complaint, filed on the court's form, and its exhibits. In reply, defendant counters that none of the witness statements attached to the complaint is signed under the penalty of perjury or otherwise sworn as is required by Rule 56(c). It is true that a verified complaint may serve as an affidavit for summary judgment purposes if it is based on personal knowledge, <u>Lopez v. Smith</u>, 203 F.3d 1122, 1132 n.14 (9th Cir. 2000), and it is also true that plaintiff's complaint is signed under penalty of perjury. The form pleading, however, contains no factual assertions, but merely directs the reader to "see the attach documents grounds for relief supporting facts. [<u>sic</u>]" Amended Complaint (Am. Compl.) at 3D. The witness statements attached to the complaint are not signed under penalty of perjury or otherwise sworn. <u>See id</u>. at 14D (statement of Jesus Mora), 15D-17D (statement of Thomas Putney).[1] Plaintiff's own declaration, though signed under penalty of perjury, is in Spanish, which the court will not consider on summary judgment.

---

[1] In a note to plaintiff, Putney says he will prepare an affidavit "in the upcoming days." If he did, it is not part of the current record.

4

1  Id. at 12D-13D.  See Local Rule 5-403 (providing automatically for interpreters in criminal cases
2  only); cf. United States v. Rivera-Rosario, 300 F.3d 1, 5 (1st Cir. 2002);  Lopez-Carrasquillo v.
3  Rubianes, 230 F.3d 409, 413-14 (1st Cir. 2000).

4         There is evidence supporting plaintiff's account of September 3, 2002, even
5  though it was not presented with his opposition.  First, one exhibit to the complaint is plaintiff's
6  grievance about the incident, which provides his description of the events based on his personal
7  knowledge and signed under penalty of perjury.  Am. Compl. at 7D-8D.   The court may rely on
8  this document in resolving the summary judgment motion.  Fitzgerald v. Henderson, 251 F.3d
9  345, 361 (2d Cir. 2001) (plaintiff could rely on sworn EEO complaint and affidavit, which
10 presented her version of events in opposition to summary judgment).

11        Second, defendant himself has offered the videotape of plaintiff's interview in
12 which plaintiff describes the incident underlying this action.[2]  A plaintiff may rely on materials
13 submitted by defendant in opposition to that same defendant's motion for summary judgment.
14 Id.  Moreover, an unsworn statement may be considered on summary judgment absent objection.
15 Ferrer v. Maychick, 69 F.Supp.2d 495, 501 n.5 (S.D. N.Y. 1999).  Finally, defendant has waived
16 any objection to consideration of the videotape by submitting it himself.  Motor Club of America
17 Ins. Co. v. Hanifi, 145 F.3d 170, 175 (4th Cir. 1998) (court properly relied on hearsay in police
18 report to establish material issue in summary judgment motion; defendants' "waived any
19 objection to the admissibility of that report when they submitted it to the court on at least three
20 occasions").

21 III.  Facts

22        Around 10 a.m. on  September 3, 2002, defendant Higgins was escorting plaintiff
23 from the walk-alone yard back to his cell in the Administrative Segregation Unit (Ad Seg)  at
24 California State Prison, Sacramento.  Motion for Summary Judgment (MSJ), Declaration of K.

---

[2] On the videotape, plaintiff speaks in Spanish and a correctional officer acts as interpreter.

Higgins (Higgins Decl.) ¶ 3; id., Declaration of D. Gregerson (Gregerson Decl.) ¶ 3; id., Ex. C (videotape); Am. Compl. at 7D ("602" or grievance form).  Plaintiff told Higgins he wanted to talk to the Ad Seg lieutenant because he had not been given his morning coffee.  MSJ, Ex. C; Am. Compl. at 7D; Higgins Decl. ¶ 4; Gregerson Decl. ¶ 4.  At this point the parties' accounts diverge in material respects.

        Higgins believed that plaintiff was refusing to return to his cell, though he does not say he directed plaintiff to go into his cell.  Higgins Decl. ¶ 5.  Although neither Higgins nor Gregerson say expressly that Higgins was holding plaintiff's arm during the escort or that Higgins had grabbed plaintiff when he asked to speak to the lieutenant, both describe plaintiff as "pulling away" from Higgins, twisting his body and attempting to kick Higgins with his left leg.  Higgins Decl. ¶ 6; Gregerson Decl. ¶ 5.  Both describe plaintiff as moving toward the door that separates two Ad Seg housing units. Gregerson Decl. ¶ 6; Higgins Decl. ¶ 8.  Higgins grabbed plaintiff's left arm and when plaintiff continued to resist, forced plaintiff off balance and used the weight of his body to bring plaintiff to the floor.  Higgins Decl. ¶¶ 8-10; Gregerson Decl. ¶¶ 7-9.  Gregerson describes this "take-down" as one of the "most gentle" he has seen.  Gregerson Decl. ¶ 10.  Higgins then helped plaintiff back to his feet and escorted him to his cell.  Gregerson Decl. ¶ 11; Higgins Decl. ¶ 12.  Higgins avers that "[a]t no time during this incident did I intend to, nor did I, use more force than necessary to bring Inmate Vega under control" nor did he intent to hurt plaintiff.  Higgins Decl. ¶¶ 14-15.

        In contrast, plaintiff claims that immediately after he told Higgins he wanted to speak with the lieutenant, Higgins began to strike him in the face and head with his closed fist.  Plaintiff stepped back and dropped or was pushed to the floor; Higgins kicked him.  Higgins then pulled plaintiff off the floor, then threw him into his cell.  Am. Compl. at 7D; MSJ, Ex. C.

        Shortly after the incident, the Facility A nurse examined plaintiff and noted minor bruises on the corner of plaintiff's left eye, on his right shoulder and inside his lips, consistent with being taken to the ground.  Reply, Declaration of T. Dixon (Dixon Decl.) ¶¶ 2, 5, 7; MSJ,

Ex. B (records) at 8-9.  Plaintiff identified these areas of bruising and added that his back was hurt as well.  MSJ, Ex. C.

IV. <u>Analysis</u>

Determining whether an Eighth Amendment violation has occurred depends on the context in which the action takes place.  Deference is to be given to the quick decisions officers must make when responding to a confrontation with "riotous inmates."  <u>Whitley v. Albers</u>, 475 U.S. 312, 320-22 (1986).  A deferential standard applies even in the case of "a lesser disruption," so long as it is necessary for guards to use force to keep order.  <u>Hudson v. McMillian</u>, 503 U.S. 1, 6 (1992).  In the case of resistance, the determinative question is "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the purpose of causing harm."  <u>Id</u>. at 7.

The Ninth Circuit has relied on the <u>Hudson</u> factors in determining whether an officer's application of force was undertaken in a good faith effort to restore discipline or maliciously and sadistically to cause harm.  <u>Martinez v. Stanford</u>, 323 F.3d 1178, 1184 (9th Cir. 2003).  These factors are: 1) the extent of the injury suffered by an inmate; 2) the need for application of force; 3) the relationship between that need and the amount of force used; 4) the threat reasonably perceived by the responsible officials; and 5) any efforts made to temper the severity of a forceful response.  <u>Id</u>.

According to the Ninth Circuit, <u>Hudson</u> mandates that the <u>Whitley</u> standard apply in all claims of excessive force against prison officials.  <u>LeMaire v. Maass</u>, 12 F.3d 1444, 1453 & n.2 (9th Cir. 1993).  However, when there is no obvious disturbance, it is crucial to look at the two elements of the Eighth Amendment inquiry.  These elements are: 1) the deprivation must be sufficiently serious, and 2) the officer must have acted with a sufficiently culpable state of mind.  <u>Wilson v. Seiter</u>, 501 U.S. 294, 298 (1991); <u>LeMaire</u>, 12 F.3d at 1451.

An Eighth Amendment violation may be established even in the absence of significant injury.  <u>Hudson</u>, 503 U.S. at 9.  "When prison officials maliciously and sadistically

7

use force to cause harm, contemporary standards of decency always are violated." Id. However, the deprivation, meaning the use of force,[3] must be more than *de minimis*. Id. at 9-10. The extent of the injury is therefore relevant to determining if the use of force is more than *de minimis*. Id. at 7 ("The absence of serious injury is therefore relevant to the Eighth Amendment inquiry, but does not end it").

Defendant argues that this case is on all fours with White v. Roper, 901 F.2d 1501 (9th Cir. 1990). In White, the plaintiff refused to enter the cell to which he had been reassigned and moved down the corridor. Deputies followed White and forcibly subdued him, which resulted in bruising and a cut wrist. The Ninth Circuit found no Eighth Amendment violation:

> White does not dispute that he refused to enter [the new] cell and backed away from Sergeant Roper, moving down the cell block corridor. Even if White did so to avoid being injured by [the new cell mate], his actions created a need for Sergeant Roper and the deputies to apply reasonable force to control him.

Id. at 1507. The court also noted that while there was a dispute over the amount of force, White had not sought medical treatment for his alleged injuries. Id.

White, however, is not analogous: in that case, it was undisputed that plaintiff had verbally and physically refused to obey an order. In this case, however, there is no such agreement: plaintiff describes being hit and kicked for asking to talk to another officer while defendant describes a restive inmate subdued with a minimum of force.

This case thus is more like Jones-Bey v. Conley, 144 F.Supp.2d 1035 (N.D. Ind. 2000). In Jones-Bey, the inmate alleged that he was putting on his shoes in response to an order to cuff-up when guards entered his cell, slammed him to the floor, handcuffed him too tightly, and then continued to beat him. In the guards' account, after the inmate refused a second order to submit to handcuffing, officers extracted him from his cell and forced him to the floor only after he had attacked them. Id. at 1038-40. The court concluded that a jury could reasonably conclude

---

[3] The Ninth Circuit has recognized that the Hudson standard focuses on the nature of the force used. Oliver v. Keller, 289 F.3d 623, 628 (9th Cir. 2002).

8

that the officers' actions, as described by plaintiff, were not undertaken in a good faith effort to maintain discipline. Id. at 1042.

The differing accounts of the underlying event in this case preclude summary judgment. Even though plaintiff did not suffer grievous injuries, the parties agree that he was bruised. Compare Hudson, 503 U.S. at 10. Moreover, while Higgins claims that he believed plaintiff was refusing to enter his cell and describes plaintiff's resistance to his attempts to enforce compliance, the essence of plaintiff's claim is that there was no need for the application of force. A reasonable jury could find, if it concludes there was no need for the application of force, the degree of force exceeded the amount of force permissible. McLaurin v. Prater, 30 F.3d 982, 984 (8th Cir. 1994) (8th Amendment violation established when guard hit inmate accused of stealing cigarettes; inmate suffered pain but no permanent injury). Summary judgment therefore should not be granted.

   B. Qualified Immunity

Defendant also argues that his motion should be granted on qualified immunity grounds. Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).

In Saucier v. Katz, 533 U.S. 194 (2001), the Supreme Court set forth a particular sequence of questions to be considered in determining whether qualified immunity exists. The court must consider this threshold question: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" Id. at 201. If no constitutional right was violated if the facts were as alleged, the inquiry ends and defendants prevail. Id.

/////

/////

> If, however, a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established.... 'The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'... The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."

Id. at 201-02 (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)). The reasonableness of a defendant's conduct is judged "against the backdrop of the law at the time of the conduct." Brosseau v. Haugen, 543 U.S. 194, 198, 125 S. Ct. 596, 599 (2004). The defendant should not be subject to liability if the law at that time did not clearly establish that the defendant's actions would violate the Constitution. Id. The Supreme Court has emphasized that "the qualified immunity inquiry must be undertaken in light of the specific context of the case." Id.

In this case, there are triable issues of fact as to whether Higgins violated plaintiff's Eighth Amendment rights. Therefore, the qualified immunity analysis turns on whether it was "clearly established" in September 2002 that the particular manner in which the defendant could be found to have used excessive force violated the Eighth Amendment.

In Hudson, decided in 1992, the plaintiff alleged that he argued with a prison guard, who thereafter punched and kicked him as plaintiff was taken to administrative segregation. 503 U.S at 4. As the Supreme Court noted, "when prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated. This is true whether or not significant injury is evident." Id. at 9. Thus, at the time the incident occurred, it was clearly established that a malicious use of force, unrelated to restoring order, violated the Eighth Amendment. Defendant is not entitled to qualified immunity.

/////
/////
//////

IT IS HEREBY RECOMMENDED that defendant's motion for summary be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within ten days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED: January 24, 2007.

_____
U.S. MAGISTRATE JUDGE

2

vega2433.57